718 F.Supp. 521 (1989)
UNITED STATES of America
v.
STATE OF LOUISIANA.
Civ. A. No. 80-3300.
United States District Court, E.D. Louisiana.
August 4, 1989.
*522 Nathaniel Douglas, Franz R. Marshall and Levern Younger, U.S. Dept. of Justice, Civ. Rights Div., for U.S.
John N. Kennedy, Sp. Counsel to the Governor, Baton Rouge, La., Joseph J. Levin, Jr. and Carla Calobrisi, Adams, McCullough & Beard, Washington, D.C., for State of La. and the Governor of State of La.
Margaret E. Woodward, New Orleans, La., for the Bd. of Regents of the State of La.
W. Shelby McKenzie and Nancy Tyler, Baton Rouge, La., for Louisiana State University Bd. of Sup'rs.
William Jefferson, New Orleans, La., for Southern University Bd. of Sup'rs.
Robert A. Kutcher and Jan Marie Hayden, New Orleans, La., for Bd. of Trustees of State Colleges and Universities.
*523 Thomas W. Todd, Chicago, Ill., for Grambling State Alumni Ass'n.
Henry N. Brown, Jr., 26th Judicial Dist. Court, Benton, La., for Bossier Parish School Bd.
Winston DeCuir, Dept. of Justice, State Capital, Baton Rouge, La., for State Bd. of Elementary and Secondary Educ.
William J. Guste, Jr., New Orleans, La., for State Atty. Gen.
Before WISDOM, Circuit Judge, and CHARLES SCHWARTZ, Jr., and WICKER, District Judges.

ORDER AND REASONS
This matter is before the Court on motion of the Southern University Board of Supervisors for an order staying the execution of judgment pending the disposition of Southern's motion for new trial and/or to alter or amend judgment and pending appeal to the United States Supreme Court. The State Attorney General joined in Southern's motion, but the State acting through the Governor opposes it. The Panel is of the opinion no oral argument on the motion is necessary and the motion is hereby taken under submission without oral argument.
The Court has reviewed Southern's memorandum and the accompanying affidavits of Joe Terrell, Chairman of the Southern University Board of Supervisors; B.K. Agnihotri, Chancellor of Southern University Law Center; Rudy Gorrell, a third year student at the Southern University Law Center; George Williams, President of Southern University and A & M College Faculty Senate; and A. Maurice Haynes, a graduate of the Southern University Law Center. These affidavits raise no new matters not previously considered by the Panel prior to the issuance of its Opinion and Order of July 19, 1989, and the Court is prepared to rule and does hereby rule as follows:
This case has been pending before this Panel for over 15 years. Following the utter failure of the consent decree, the Court undertook to tailor a remedy that would undo the segregation existing at all levels of the State's higher education system. Through the Court's inherent powers to take action to supervise the execution and enforcement of its orders the Court may make appropriate adjustments to its Order on an ad hoc basis. The Court will continue to oversee this case, principally by the mechanism of a monitoring system. In this regard, periodic reports of the Monitoring Committee will be filed in the record and will be available to the parties for their own evaluation.
Only one bell in the Court's Opinion and Order would be difficult to unring in the near future, and that is the actual assumption of power by the single administrative board and the accompanying dismantling of the four governing boards. We observe, however, that the segregation maintained by the four board system is incompatible with any suggestion that the four board system retains viability. For this and other reasons, the Panel is of the opinion that Southern has shown little likelihood it will prevail on the merits of this aspect of Southern's appeal, and thus, no stay is warranted on this ground. The Panel entertains similar doubts with respect to Southern's likelihood of success on the merits of its other claims.
Brown was decided thirty-five years ago. It is high time that higher education in Louisiana be reworked at all levels in a unified effort to improve the education offered in this state to all Louisiana citizens. This Court will not countenance any delay in the effectuation of the tailored remedies it perceives to be mandated by the federal Constitution and the State's best interests.
The motion for a stay is accordingly DENIED.

SUPPLEMENTAL ORDER
This matter is before the Court on motions of the United States of America, the Southern University Board of Supervisors joined by the Attorney General and the Grambling Alumni Association for new trial and/or to alter or amend judgment. These motions are hereby GRANTED in part and DENIED in part, and in order to *524 obviate any ambiguity or uncertainty contained in the Panel's Opinion and Order of July 19, 1989, the Court specifically adopts the following suggestions of the parties. These matters are for the most part implicit in and consistent with the Opinion and Order and may also be brought before the Court by the Monitoring Committee.
Accordingly, it is ORDERED:
(1) The Board shall immediately desegregate the staffs and faculties of all public institutions by implementing at each state institution aggressive recruitment of qualified other-race employees and nondiscriminatory assignment policies, as set forth below[1]:
(A) The Board shall require each institution to take affirmative steps to recruit and hire qualified other-race faculty, staff, and administrators. The Board shall be committed to making outreach efforts where the proportion of black administrators, faculty, and staff employed at each predominantly white public institution of higher education and staff employed by each higher education board is different from the proportion of black individuals with the required credentials in the relevant labor market area. The predominantly black institutions shall also continue outreach efforts to increase their proportion of other-race staff and administrators. Each institution shall within 90 days develop a plan for recruiting qualified other-race faculty, administrators, and staff, taking into account the relevant labor market data for each category of positions and documenting the data used as part of the aforementioned plan; shall provide said plan to the Board and the Monitoring Committee.
(B) Institutions' affirmative efforts shall include advertising in professional journals, such as the "Chronicle of Higher Education," and local newspapers, and initiating contact with universities nationwide concerning vacancy announcements.
(C) All state institutions shall take all reasonable nondiscriminatory steps to increase the number of qualified other-race persons among its part-time and full-time faculties, professional administrators, and support staff positions through employing, training, and promoting qualified other-race persons as vacancies occur and new positions are created.
(D) Each state institution shall make a good faith effort, in addition to its existing recruitment activities, to identify qualified other-race persons living and/or working within a reasonable distance of the institution who are interested in teaching on a part-time basis at the institution. Each institution shall consider the following persons: professionals, school teachers and administrators, and persons employed by businesses within a reasonable distance of the institution, who are qualified to teach the course or courses involved. In attempting to identify persons who may be interested and available for part-time employment with the institution, each institution shall seek the assistance of professional associations, community groups, businesses, and elementary and secondary school officials.
The utilization of part-time faculty shall be consistent with accreditation requirements and the needs of the institutions, and no qualified applicant shall be denied such a position on the basis of race.
(2) The four governing boards shall cease operation and their powers to be consolidated into a single board no later than thirty (30) days from the entry of the Court's Order of July 19, 1989, or if no single board is appointed and ratified by that time, immediately upon appointment of the single board by the Court in conjunction with the Monitoring Committee.[2]
(3) The reports of the Monitoring Committee shall be filed in the record and the Clerk of Court shall mail copies of the report to all trial attorneys of record. The *525 parties shall review each of the Monitoring Committee reports and file with the Court and mail to each of the Committee members within 30 days after the Monitoring Committee Report is filed with the Clerk any comments about progress or lack of progress in achieving desegregation.
If upon reviewing a particular report, any party has concerns which it expressed in writing, such party or parties may meet with the Monitoring Committee for the purpose of discussing its concerns and offering any suggestions it may have on how problems areas may be addressed. Should such concerns not be resolved amicably, such party or parties may petition the Court for the purpose of convening a status conference and scheduling a hearing, if necessary.[3]
(4) The Court's Injunction and Orders shall remain in effect until December 31, 1994, unless the plaintiff and/or another party by motion filed prior to that date request the Court to conduct a hearing for the purpose of determining whether the defendants have fully complied with the Court's Orders and/or whether or not the case should be dismissed and/or whether or not additional relief be granted. In such a hearing, the burden shall be upon movant to prove by a preponderance of the evidence that the objectives of the Order have not been achieved and further and/or continued and/or additional relief is required. If that burden is carried, this Court shall enter such further Orders as is appropriate. If that burden is not carried, jurisdiction shall be terminated and this action shall be closed and dismissed with prejudice.[4]
NOTES
[1] The matters set forth in item (1) generally reflect clarification requested by the United States of America and by the Southern Board of Supervisors. The specific matters set forth in subsections (A) through (D) were adopted from the United States' Proposed Plan, Rec.Doc. No. 325, pp. 23-25.
[2] This clarification is made at the request of the United States.
[3] The clarifications set forth in item (3) were requested by the United States.
[4] The matters set forth in item (4) are based upon the United States' Proposed Plan, Rec.Doc. No. 325, pp. 34-35.